IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| SPRAGUE ENERGY CORP., | ) | |
|---|---|---|
| a New Hampshire corporation, | ) | |
| | ) | Civil Action No. 07-962 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| UNION DRAWN STEEL II, LIMITED, a | ) | Doc. No. 6 |
| Canadian corporation, and BVHT, INC., a | ) | |
| Pennsylvania corporation, | ) | |
| | | |
| Defendants. | | |

## **OPINION AND ORDER**

LENIHAN, M. J.

Currently before the court for disposition is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(2) (Doc. No. 6) in this diversity action alleging violations of state common law claims. Plaintiff has alleged claims for breach of contract arising out of the sale of natural gas to Defendant BVHT. The Plaintiff also seeks to hold Union Drawn liable on the basis that BVHT is a wholly-owned subsidiary of Union Drawn. Specifically, Plaintiff contends that Defendant Union Drawn is liable for Defendant BVHT's failure to pay for natural gas supplied by Plaintiff. Plaintiff also avers that Union Drawn induced the Plaintiff to believe Union Drawn would provide payment for the natural gas in the event BVHT became delinquent in its payments. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

For the reasons set forth below, the Court finds that Plaintiff has alleged insufficient facts to support the finding of personal jurisdiction over Defendant Union Drawn to withstand its motion to dismiss. However, if after conducting discovery Plaintiff believes that sufficient evidence has been produced to support the exercise of personal jurisdiction over Defendant Union Drawn,

Plaintiff may file a Motion for Reconsideration of the Order below within ten days of the close of discovery.

I. **FACTS**

Sprague Energy Corporation ("Sprague" or "Plaintiff"), incorporated in the State of Delaware and having its principal place of business in the State of New Hampshire, was incorporated for the purpose of distributing and selling natural gas through local distribution companies. (Compl. ¶¶ 1, 5.) The defendants are Union Drawn Steel II, Limited ("Union Drawn" or "Defendant") and BVHT, Inc. ("BVHT"). Union Drawn is a Canadian corporation involved in the steel industry with its principal office and place of business in Hamilton, Ontario. (Compl. ¶ 2.) BVHT is a Pennsylvania corporation that was incorporated for the purpose of producing specialty steel products and has its principal place of business in Monaca, Pennsylvania. BVHT is a wholly-owned subsidiary of Union Drawn. (Compl. ¶ 3.)

Beginning in May 2004, Sprague began to supply natural gas to BVHT's facility in Monaca, Pennsylvania. The relationship allegedly arose when Union Drawn placed a verbal order with Sprague for the delivery of natural gas to BVHT. (Compl. ¶ 8.) Before supplying any gas, Sprague determined that BVHT's creditworthiness was insufficient to allow the purchase of gas on credit. Sprague stipulated that Union Drawn would have to secure the sale of any natural gas provided to BVHT. As a result, Union Drawn provided the Plaintiff with a copy of a consolidated audit which represented financial information for both corporations. (Aff. of Brian Weego (hereinafter "Weego Aff.") at ¶¶ 3, 4, 9.) After verifying the financial information, Sprague issued a written confirmation in response to Union Drawn's request. While the confirmation outlined the terms and conditions of the purchase of natural gas, the parties did not enter into a written contract. Sprague claims to

have faxed copies of the confirmation to Union Drawn; however, it appears these confirmations were actually faxed to the BVHT facility in Pennsylvania. (Compl. ¶ 9.) After this initial order, twenty (20) other verbal orders were communicated to Sprague and a similar confirmation followed each order. (Compl. ¶ 10.)

After receiving the initial order, Sprague began to supply natural gas to BVHT in June 2004 and continued to do so until May 2006. (Compl. ¶ 12.) BVHT became delinquent with its payment for the gas ordered for the months of November 2005 and January 2006 through April 2006. (Compl. ¶ 14.) After repeated demands for payment, Sprague terminated service to BVHT effective May 1, 2006. The continued lack of payment prompted Sprague to file suit for breach of contract against BVHT and Union Drawn in July 2007 claiming damages in the amount of $297,363.60, exclusive of interest and costs. (Compl. ¶¶ 15, 16.)

While Defendant BVHT acknowledges that this Court has personal jurisdiction over it, Defendant Union Drawn filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), claiming that neither specific nor general jurisdiction exists. Union Drawn asserts several arguments in support of its motion to dismiss regarding specific jurisdiction. First, Union Drawn claims that at no time was it a party to a contract to supply natural gas to BVHT. (Def. Brief in Support of Motion to Dismiss, at 2.) Further, Union Drawn claims that it used none of the gas supplied to BVHT. (Aff. of Michael Pitterich (hereinafter "Pitterich Aff.") at ¶ 5.) Union Drawn also asserts that BVHT is a separate corporation and the Monaca, Pennsylvania facility is owned and operated by BVHT and that Union Drawn was neither an agent of BVHT nor did it have the authority to act as an agent for BVHT. (*Id.* at ¶ 8.) Finally, Union Drawn indicates that the confirmations for gas orders were faxed to BVHT in Pennsylvania and not to Union Drawn in

Ontario. (*Id.* at 3.)

The Plaintiff alleges that Union Drawn engaged in extensive contracting and that its course of dealings in Pennsylvania are sufficient to give rise to personal jurisdiction over the Defendant. However, the Defendant claims that its only contacts with the Commonwealth of Pennsylvania consist of several isolated sales of steel over the past ten years. (Pitterich Aff. at ¶ 4.) Union Drawn also claims that it engages in no business in the Commonwealth, it has no customers in the Commonwealth, it is not a party to any contracts in the Commonwealth, it does not actively solicit business in the Commonwealth, it does not own real property in the Commonwealth, it does not lease or otherwise maintain any offices in the Commonwealth, it does not have any employees or agents who work in the Commonwealth, and it is not registered to do business in the Commonwealth. *Id.*

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, the court must accept as true all allegations contained in the complaint. *William Rosenstein & Sons, Co. v. BBI Produce, Inc.,* 123 F.Supp.2d 268, 269 (M.D.Pa. 2000) (citing *Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir. 1996)). However, in response to a 12(b)(2) motion, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Id.* at 269-70 (citing *Dayhoff, supra; North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir. 1990) (citations omitted)); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir. 1984) (citation omitted). Thus, because a 12(b)(2) motion requires resolution of factual issues outside the pleadings, the plaintiff may not rely on the pleadings alone to carry its

4

burden of establishing the jurisdictional facts. *Id.* at 270 (citing *Time Share Vacation Club,* 735 F.2d at 66 n.7).

The standards applicable to contract disputes in the Third Circuit were announced in *Telecordia*:

> In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances. . . . Traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contact. . . . [However], physical presence in the forum is no longer determinative in light of modern commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum. . . . Finally, [i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation or its breach.

*Telecordia Tech. Inc. v. Telkom SA Ltd,* 458 F.3d 172, 177 (3d Cir. 2006).

### III. ANALYSIS

The starting point for determining whether personal jurisdiction can be exercised over a nonresident defendant is Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Mellon Bank (East) PSFS, National Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted). Pennsylvania's long-arm statute, codified at 42 Pa.C.S.A. § 5322(b), permits Pennsylvania courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [Pennsylvania] allowed under the Constitution of the United States." Thus, as long as the requirements of the Due Process Clause of the United States Constitution have been satisfied, jurisdiction will lie over non-resident defendants in Pennsylvania. *Farino,* 960 F.2d at 1221; *Pennzoil Products Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citing *Farino,*

960 F.2d at 1221; *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir. 1994)); *Santana Products, Inc. v. Bobrick Washroom Equipment,* 14 F.Supp.2d 710, 713 (M.D.Pa. 1998).

It is fundamental that, to satisfy due process requirements, the defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted). The minimum contacts requirement "protect[s] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted). This framework enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297. Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker v. Roche Holdings, Inc., Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002)), while general jurisdiction exists where the defendant's contacts with the forum are "continuous and

6

systematic" but are not related to the plaintiff's cause of action. *Pennzoil,* 149 F.3d at 200 (citation omitted). In this case, Sprague argues that specific jurisdiction over Union Drawn is proper; however, Union Drawn argues that neither type of personal jurisdiction exists.[1]

In determining whether it can exercise specific jurisdiction, the court generally applies two standards: one is mandatory and the other is discretionary. *Pennzoil*, 149 F.3d at 201; *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998)(citation omitted). Initially, the court "must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into Court there.'" *World-Wide Volkswagen,* 444 U.S. at 297. Whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)). In examining this relationship, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum State. *Burger King,* 471 U.S. at 472 (quoting *Keeton,* 465 U.S. at 774).

---

1. Based on the documents submitted to the Court, the Plaintiff apparently does not contend that general jurisdiction exists in this matter. Nevertheless, based on these materials, it appears that the level of contacts Union Drawn has had with the Commonwealth of Pennsylvania do not rise to the continuous and systematic nature required to confer general jurisdiction. The Court of Appeals has held that a plaintiff must prove significantly more than mere minimum contacts to invoke the court's general jurisdiction. *Provident Nat'l Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). Thus, to satisfy due process, the contacts of a nonresident defendant with the forum must be continuous and substantial. *Id.* (citations omitted). For example, continuous and substantial contacts were found to exist where the evidence of record showed that defendants transacted business in the forum "[b]y maintaining an office and an agent in [the forum] on an ongoing basis, entering into contractual relationships in [the forum], and designating and maintaining billing and technical contacts within [the forum]," thereby subjecting the non-resident defendants to the general jurisdiction of the forum district. *Twentieth Century Fox Film Corp. v. ICRAVETV,* Nos. Civ.A. 00-121 and 00-120, 2000 WL 255989, * 4 (W.D.Pa. Feb.8, 2000) (citations omitted).

7

Only if "minimum contacts" are established does the court apply the second standard–whether the defendant's contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316). In applying the fairness standard, the court will examine the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

In the instant case, Plaintiff claims that specific jurisdiction exists over Union Drawn. Despite Plaintiff's efforts to provide evidence supporting personal jurisdiction over Union Drawn, the Court finds that Plaintiff has failed to provide sufficient evidence to show that this cause of action arises out of or directly relates to the conduct of Union Drawn. The affidavit, confirmations and sales invoices provided by Plaintiff simply fail to establish that Union Drawn purposely directed its activities toward the residents of Pennsylvania.

In order to satisfy its burden of proving personal jurisdiction, it was necessary for Plaintiff to come forward with competent evidence demonstrating Union Drawn's contacts with the Commonwealth of Pennsylvania. Despite this necessity, the Plaintiff's allegations supporting the existence of specific jurisdiction over Union Drawn appear to be merely speculative. For example, the affidavit's reference to Sam Yaramus states that he is a "Union and/or BVHT representative." Because Plaintiff is not even sure who employs Mr. Yaramus, the Plaintiff relies on mere speculation to support personal jurisdiction over Union Drawn and has failed to prove this averment

by a preponderance of the evidence. Therefore, Plaintiff has provided facts insufficient to establish personal jurisdiction.

Plaintiff places significance on the fact that its sales invoices identified Union Drawn as the purchaser of the ordered natural gas. However, this argument describes unilateral activity by the plaintiff which is insufficient to establish personal jurisdiction over a defendant. *Burger King*, 471 U.S. at 475 (quoting *Hanson*, 357 U.S. at 253). Furthermore, to give such boilerplate language[2] Plaintiff's desired effect would be to raise form over substance. Despite relying on this language, Plaintiff indicates that the confirmations were all sent to BVHT's facility in Pennsylvania and not to Union Drawn in Ontario. (Weego Aff. at ¶ 11.) Thus, by the Plaintiff's own words, their confirmations were never sent to Union Drawn.

In support of its claims of personal jurisdiction over Union Drawn, Plaintiff cites *Publicker Industries, Inc., v. Roman Ceramics Corp.,* 652 F.2d 340 (3d Cir. 1981). However, *Publicker* is distinguishable from the instant set of facts. In *Publicker*, the Third Circuit held that a parent corporation's involvement in the negotiation, renegotiation, and partial performance of its subsidiary's contract "manifested [the parent corporation's] agreement to bear direct liability." 652 F.2d at 344. Thus, the issue before the court was the liability of a parent corporation for a contract breached by its subsidiary.[3] However, the issue of liability is a discrete issue completely separate

---

2. Each of the confirmations provided:
>  Should the foregoing not reflect your understanding of the transaction please contact your SPRAGUE rep within 24 hours from receipt of this confirmation, otherwise, this transaction shall be considered acceptable to both parties and effective as of the above terms and conditions.

 (Compl. ¶ 10.)

3. There was a jurisdictional issue before the court, but it pertained solely to determining whether diversity of citizenship existed between the plaintiff and the defendant corporations.

from the question of personal jurisdiction. Indeed, in order for *Publicker* to be applicable here, Plaintiff must first present competent evidence to demonstrate that the exercise of personal jurisdiction over Union Drawn is proper. Because the *Publicker* holding addresses the substantive issue of liability of a parent corporation for the conduct of a subsidiary, the Plaintiff's reliance on *Publicker* in support of personal jurisdiction over Union Drawn is misplaced.

The Plaintiff also cites *American Eagle Outfitters, Inc. V. Lyle & Scott Ltd.*, Civ. Ac. No. 06-607, 2007 U.S. Dist. LEXIS 30074, at *11 (W.D. Pa. April 24, 2007) in support of this Court exercising personal jurisdiction over Union Drawn. However, *American Eagle* is also distinguishable from the case at bar. First, in the dispute in *American Eagle* the defendant's contacts with Pennsylvania that gave rise to personal jurisdiction were numerous. *Id.* at *7. Second, the defendant in *American Eagle* entered into protracted contract negotiations with a Pennsylvania corporation. *Id.* at *3. In the instant case, Defendant Union Drawn is not a Pennsylvania corporation. Additionally, the only contacts Union Drawn allegedly had with Pennsylvania were fortuitous. Specifically, Sprague has indicated that Union Drawn's audit was prepared by a Pittsburgh, Pennsylvania accounting firm and that Union Drawn has an on-going relationship with a Western Pennsylvania Attorney. The evidence also indicates that the owner of both Union Drawn and BVHT resides in Pennsylvania. These contacts indicated by Plaintiff are not sufficient to give rise to personal jurisdiction over Union Drawn as they are merely coincidental.

Plaintiff's reliance on *American Eagle* is improper for a second reason. Plaintiff contends that this Court should exercise personal jurisdiction over Union Drawn because that Defendant was the "moving force" in negotiating and securing the contract between BVHT and the Plaintiff. Plaintiff has only alleged that Union Drawn provided the financial security necessary for BVHT to

purchases natural gas on credit. (Weego Aff. at ¶ 10.) There is no proof to support the contention that Union Drawn was the "moving force", and even if there was, none of these negotiation efforts were directed toward Pennsylvania. By comparison, in *American Eagle* the contract negotiations were directed toward the forum state. *Id.* at *11. As a result, the Plaintiff's reliance on *American Eagle* is misplaced.

The parties did not memorialize the terms of their agreement in a contract. All that is alleged is that Defendants entered into an agreement with Plaintiff. The only details given regarding this agreement reference boilerplate language on Plaintiff's confirmations and invoices. Since Plaintiff bears the burden of proof at this stage of the proceedings, it was incumbent upon it to provide either a copy of the agreement or a sworn affidavit containing a description of the negotiations and terms of the alleged agreement. *Time Share Vacation Club,* 735 F.2d at 64-65 (where plaintiff relied on a contract to establish minimum contacts of the defendants with Pennsylvania, the court opined that either a copy of the contract or an explanation for its absence should have been provided). No such evidence was proffered by Plaintiff. Nor did Plaintiff provide any evidence that the agreement was made in Pennsylvania. Nor is there any evidence that Union Drawn was the contracting party as opposed to BVHT. Thus, there is nothing in the record to indicate that Union Drawn had anything but fortuitous contacts with Pennsylvania. Accordingly, the Court finds that Sprague has failed to produce any evidence that Union Drawn had the "minimum contacts" required to have reasonably anticipated being haled into court in this District.[4]

---

4. Because the Court has found that Plaintiff failed to satisfy the "minimum contacts" standard for specific jurisdiction with regard to Union Drawn, it need not address the discretionary standard, *i.e.,* whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.

11

## IV. CONCLUSION

Sprague Energy Corporation has not presented evidence sufficient to establish personal jurisdiction over Union Drawn Steel II, Limited. Thus, the Plaintiff has failed to carry its burden. However, if after conducting discovery Plaintiff believes sufficient evidence has been produced to support the exercise of personal jurisdiction over Defendant Union Drawn, Plaintiff may file a Motion for Reconsideration of the Order below within ten (10) days of the close of discovery.

## ORDER

AND NOW, this 12th day of March, 2008, in consideration of Defendant Union Drawn Steel II's Motion to Dismiss Pursuant to Rule 12(b)(2) (Doc. No. 6), it is hereby ORDERED that said Motion is GRANTED, and the complaint is hereby DISMISSED WITHOUT PREJUDICE as to Defendant Union Drawn Steel II only. It is further ORDERED that any motion for reconsideration of this Order shall be filed within ten (10) days of the completion of discovery. If no such motion for reconsideration is filed within that deadline, the Court will enter an order dismissing the Complaint with prejudice as to Defendant Union Drawn Steel II, without further notice to the parties.

By the Court:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: All Counsel of Record

*Via Electronic Mail*